GRACEY, JUDGE:
The claimant seeks damages of $58,484.52 it allegedly expended in the making of alterations and installation of a fire alarm system in its building at Welch, West Virginia, for use of the Department of Welfare (now known as the Department of Human Services). Of said claim, $8,042.31 is for attorney fees and expenses.
By lease dated and effective June 1, 1970, the State of West Virginia leased 17,500 square feet of the building from the claimant for ten years, to May 31, 1980, at a rent of $1.88 per square foot per year. At the termination of that lease, the respondent offered to extend the term on a month-to-month basis at the same rent, but the claimant counterproposed an increase of rent to $3.00 per square foot per year. By lease dated October 15, 1980, the respondent leased the same premises from the claimant for two years, from June 1, 1980 to May 31, 1982, at $3.00 per square foot per year. Both of these leases have several common clauses found in state leases of real estate, one of which, in the ten-year lease, reads as follows:
“(5) The Lessor will remove and correct any fire or health hazards not caused by the neglect or acts of the Lessee, its agents, employees, or servants which any public authority may order corrected or removed during the term of this lease. Upon refusal or neglect of Lessor to comply with any such order, the Lessee may comply therewith and deduct the costs and expenses thereof from the rents which may become due and payable thereafter to the Lessor until the Lessee is fully reimbursed therefor.”
This same clause appears as paragraph numbered (6), headed “FIRE AND HEALTH HAZARDS”, in the two-year lease, except that the word “Tenant” is therein substituted for the word “Lessee”.
On November 21, 1980, a fire safety inspection of the premises was made by Frank Ubeda, of the State Fire Marshal’s office, working out of the Beckley area. A comprehensive report, listing many requirements, including an electrically supervised fire alarm system, was *134 issued and submitted to the respondent and claimant. By August 28, 1981, some $20,000,00 had been expended by the claimant toward compliance. Betty Jo Jones, then the respondent’s Area Administrator in charge of the office at Welch, was dissatisfied with the progress of the work, and the respondent withheld the monthly rent for several months. At a meeting held on that date, the claimant contends that its representatives received assurances that the respondent would be continuing to lease the premises, after termination of the two-year lease, and that the claimant, upon such assurances, continued with its work toward compliance. Respondent’s witnesses deny giving any such assurances or commitment, although respondent admits that it may have then told the claimant’s representatives that it then had no plans or intentions of moving its offices at the termination of the two-year lease.
Claimant contends that it may or may not have continued its compliance work without such assurances; that it would have been a business consideration; that only upon such assurances could it depend on recovering its expenses in a new lease after termination of the two-year lease then in effect. It is clear from the evidence that negotiations toward a possible new lease had been ongoing for some time, as one might expect. Claimant intimates that at the beginning of the ten-year lease, the then Commissioner of Finance and Administration had agreed that certain proposed specifications, including a fire alarm system, could be deleted; that the rent would have been accordingly higher otherwise, to recover the cost.
Whatever assurances were or were not in fact given at the August 28, 1981 meeting, or at other meetings, or assumed by the claimant from the conduct of ongoing negotiations for a new lease at the termination of the two-year lease, it appears to the Court that the claimant, in incurring the expense incident to fire safety compliance, was simply fulfilling its obligation, as Lessor, under the terms and provisions of the lease then in effect, and is not entitled to reimbursement.
All rent payable, including the several months rent temporarily withheld, was fully paid to the claimant. In late 1981 or eaply 1982, the respondent responded to offers of owners of other premises for lease, and moved to another location at the termination of the two-year lease. As the respondent fulfilled its obligations in accordance with the terms of the lease, the Court is of the opinion to disallow the claim.
Judge Wallace did not participate in the hearing or decision of this claim.
Claim disallowed.